BAYOU STEEL CORP., et al., Plaintiffs,

v.

M/V AMSTELVOORN, her engines, tackle, apparel, furniture, etc., in rem, et al., Defendants.

NEDLLOYD BULK, B.V., and Nedlloyd Rederijdiensten, B.V., Defendants/Third-Party Plaintiffs-Appellees/Cross-Appellants,

v.

FOREIGN TRADE ENTERPRISE KORABOIMPEX and Georgi Dimitrov Shipyard, Third-Party Defendants-Appellants/Cross-Appellees.

NEDLLOYD BULK, B.V. and Nedlloyd Rederijdiensten, B.V., Plaintiffs-Appellees/Cross-Appellants,

v.

FOREIGN TRADE ENTERPRISE KORABOIMPEX and Georgi Dimitrov Shipyard, Defendants-Appellants/Cross-Appellees.

NEDLLOYD BULK, B.V. and Nedlloyd Rederijdiensten, B.A., Plaintiffs-Appellees,

v.

FOREIGN TRADE ENTERPRISE KORABOIMPEX, Georgi Dimitrov Shipyard, Zaklady Urzadzen Cretowych "Hydroster", Defendants-Appellants.

Nos. 85–3557, 85–3752.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1987.

Rehearing and Rehearing En Banc Denied March 27, 1987.

George A. Frilot, III, Scott S. Partridge, New Orleans, La., for Foreign Trade Enterprise and Georgi Dimitrov Shipyard.

Chaffe, McCall, Phillips, Toler & Sarpy, Robert B. Deane, Frank V. LeBlanc, III, Kenneth J. Servay, New Orleans, La., for

Nedlloyd Bulk and Nedlloyd Rederijdiensten.

Before POLITZ, RANDALL, and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

This admiralty jurisdiction litigation arises out of an allision between the M/V AMSTELVOORN and a dock facility, owned by Bayou Steel Corporation, and two barges, owned by Alter Barge Lines. Bayou Steel, Alter Barge Lines, and their insurers filed suit against the AMSTELVOORN and her owners and charterers, referred to herein collectively as "Nedlloyd."[1] Nedlloyd filed third-party demands against Georgi Dimitrov Shipyard, a Bulgarian corporation which built the AMSTELVOORN, and Foreign Trade Enterprise Koraboimpex, a Bulgarian corporation which marketed the vessel. Both corporations are owned by the Bulgarian government and are hereafter referred to as "the Bulgarians."

The Bulgarians challenged the district court's *in personam* jurisdiction as violative of the due process clause of the fourteenth amendment and as improperly obtained under the Louisiana long-arm statute, La.R.S. 13:3201. Reserving its rights under this objection, the Bulgarians third-partied Zakalady Urzaden Okretowych Hydroster, a Polish corporation, secured service against it, and ultimately took a default judgment because it failed to respond.

Nedlloyd settled its claims against Bayou Steel, Alter Barge Lines and their insurers, becoming subrogated to their rights, advanced herein along with its own claims.

The district court denied the Bulgarians' jurisdictional challenge and, at Nedlloyd's request, sent most issues to arbitration pursuant to a clause in the contract of sale of the vessel. The trial court certified its jurisdiction and arbitration orders, 28 U.S.C. § 1292(b); we accepted that certification and consolidated the two appeals. Finding the exercise of jurisdiction constitutionally impermissible, we reverse the court's ruling on that matter and vacate its arbitration order as it would apply to the Bulgarians.

*Waiver*

■ Acting pursuant to the provisions of Fed.R.Civ.P. 4, Nedlloyd sought to secure service of process by using the Louisiana long-arm statute. Nedlloyd first contends that the Bulgarians waived any objections to *in personam* jurisdiction by impleading the Polish corporation which manufactured the steering system on the AMSTELVOORN. Prior to the adoption of the Federal Rules of Civil Procedure in 1938, this argument would have prevailed. *Merchants Heat & Light Co. v. J.B. Clow & Sons*, 204 U.S. 286, 27 S.Ct. 285, 51 L.Ed. 488 (1907). Following adoption of the Federal Rules, the effect of the filing of a claim for affirmative relief on a jurisdictional plea became a matter of dispute, an outgrowth of Fed.R.Civ.P. 12(b) which provides in pertinent part:

[e]very defense, in law or in fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto, if one is required.... *No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.* (Emphasis added.)

Relying on the emphasized language, it was early contended that the Federal Rules abrogated the long-standing waiver rule by permitting a defendant to seek affirmative relief without forfeiting an objection to jurisdiction. While some of the early cases

---

**1.** Nedlloyd Bulk, B.V., owns the vessel, and Nedlloyd Rederijdiersten, B.V. operates it. Both are Dutch corporations.

rejected this position,[2] and federal law on the issue has been described as being "in disarray,"[3] the majority view supports the proposition that jurisdictional defenses are *not* waived by the filing of a responsive pleading.[4] This court recognized but pretermitted a decision on the issue. *Bangor Punta Operations, Inc. v. Universal Marine Co., Ltd.,* 543 F.2d 1107 (5th Cir. 1976).[5] We now adopt what we consider to be the better reasoned[6] and prevailing view, and hold that the filing of a counterclaim, cross-claim, or third-party demand does not operate as a waiver of an objection to jurisdiction, whether that objection is raised by motion or answer, provided that the objection is not otherwise waived in the course of the litigation.

### The Long-Arm Statute

■ Typically, the first inquiry in determining whether the Bulgarians are subject to the jurisdiction of the court *a quo* asks whether the Louisiana long-arm statute purports to reach them. On this point, Nedlloyd urges another waiver theory. During pretrial procedures the Bulgarians disputed whether the formal mechanics of the statute had been complied with, but to expedite the court's reaching their more serious challenge, they stipulated to suffi-

ciency of the mechanics of service, preserving their substantive objection. Nedlloyd would now seek to parley that stipulation into a full-blown waiver of all objections to long-arm service. We find their contention borderline frivolous and summarily reject it.

Whether the Louisiana statute authorizes service against the Bulgarians posits a very difficult question under the present unsettled state of Louisiana law. A line of decisions by the Louisiana Supreme Court states that the Louisiana long-arm statute extended jurisdiction to the maximum point permitted by due process limitations. *See, e.g., Fryar v. Westside Habilitation Center,* 479 So.2d 883 (La.1985). *Adcock v. Surety Research and Investment Corp.,* 344 So.2d 969 (La.1977). Recent decisions by Louisiana's intermediate appellate courts, from which applications for review were denied by Louisiana's highest court, have held otherwise. *Alba v. Riviere,* 457 So.2d 33 (La.App.), *writ denied,* 452 So.2d 194 (1984); *Robinson v. Vanguard Ins. Co.,* 468 So.2d 1360 (La.App.), *writ denied,* 472 So.2d 34 and 472 So.2d 924 (1985).

Sitting as an *Erie* court and mandated to apply state law as announced by the state courts, we recognized the dilemma and

---

**2.** *See, e.g., North Branch Products, Inc. v. Fisher,* 284 F.2d 611 (D.C.Cir.1960).

**3.** *Cargill, Inc. v. Sabine Trading & Shipping Co., Inc.,* 756 F.2d 224, 229 (2d Cir.1985).

**4.** The leading case is *Neifeld v. Steinberg,* 438 F.2d 423 (3d Cir.1971), following the "seminal" case of *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871 (3d Cir.1944). *See also Cargill, Inc. v. Sabine Trading & Shipping Co.,* 756 F.2d 224 (2d Cir.1985) (finding no waiver by filing counterclaim to action commenced *quasi in rem* ); *Chase v. Pan Pacific Broadcasting, Inc.,* 750 F.2d 131 (D.C.Cir.1984); *Knapp-Monarch Co. v. Dominion Electric Corp.,* 365 F.2d 175 (7th Cir.1966); *Hasse v. American Photograph Corp.,* 299 F.2d 666 (10th Cir.1962); *Happy Mfg. Co. v. Southern Air & Hydraulics, Inc.,* 572 F.Supp. 891 (N.D.Tex.1982) (venue defense not waived); *Lomanco, Inc. v. Missouri Pacific R.R. Co.,* 566 F.Supp. 846 (E.D.Ark.1983).

All cases addressing the issue deal with the filing of counterclaims, rather than third-party actions. The reasoning advanced is equally appropriate in either situation.

**5.** Nedlloyd's reliance on *Rubens v. Ellis,* 202 F.2d 415 (5th Cir.1953) and *Kincade v. Jeffrey-DeWitt Ins. Co.,* 242 F.2d 328 (5th Cir.1957) is misplaced. Neither involved personal jurisdiciton.

**6.** We agree with the colorful language and similes of our colleagues of the Third Circuit, expressed soon after adoption of the Rules in *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 874 (3d Cir.1944):

Rule 12 has abolished for the federal courts the age-old distinction between general and special appearances. A defendant need no longer appear specially to attack the court's jurisdiction over him. He is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law, de bene esse, in order by its magic power to enable himself to remain outside even while he steps within. He may now enter openly in full confidence that he will not thereby be giving up any keys to the courthouse door which he possessed before he came in.

have sought guidance from the ultimate authority on the subject. We have certified the question to the Louisiana Supreme Court. *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367 (5th Cir.1986). This recently-placed request has not yet been acted upon.

Due to this uncertainty in the reach of the Louisiana long-arm statute,[7] we have determined to pretermit statutory considerations and, finding the constitutional aspect dispositive, we proceed to resolution on that basis. While we are mindful of and fully support the rubric that constitutional decisions should be avoided if a statutory disposition may be made, the rule is not absolute. *Bolden v. City of Mobile*, 571 F.2d 238 (5th Cir.1978), *rev'd on other grounds*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980). The present case warrants advancing the constitutional issue to the head of the line.

### Due Process

■ The Bulgarians invoke the due process clause of the fourteenth amendment, contending that they are not amenable to suit in federal court in Louisiana. Our consideration begins with the teachings of *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), that due process will support *in personam* jurisdiction over a nonresident only in instances in which the defendant has sufficient contacts with the forum so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158. Notwithstanding the admiralty set-

ting, the due process standard of the fourteenth amendment is applicable. We recently held that absent congressional direction to the contrary, Rule 4 of the Federal Rules of Civil Procedure adopts the constitutional standards applicable to state courts for federal fora in settings such as here presented. *Point Landing, Inc. v. Omni Capital Intern., Ltd.*, 795 F.2d 415 (5th Cir.1986) (en banc), *cert. granted sub nom., Omni Capital Intern. v. Rudolph Wolff & Co., Ltd.*, —— U.S. ——, 107 S.Ct. 946, 93 L.Ed.2d 995 (1987).

A close examination of the activities of the Bulgarians reflects a paucity of contacts with Louisiana. The Bulgarians had neither office nor employees in Louisiana and transacted no business there. They did not contract to supply or service the AMSTELVOORN in Louisiana, committed no tortious conduct in Louisiana, and sent neither agent nor representative there. We find only the fact that ships built and sold by the Bulgarians made port calls in Louisiana.

Stripped to essentials, the position of Nedlloyd is that the court had jurisdiction because the Bulgarians introduced a product, the vessel, into the stream of commerce, that its presence in Louisiana was foreseeable, and that the Bulgarians reasonably could have anticipated being haled into court in Louisiana. In proper context, that stream-of-commerce principle provides guidance for it "is designed to encompass companies that purposefully serve markets broader than the states in which its initial or direct sales are made." *Petroleum Hel-*

---

7. Were Nedlloyd's claims clearly within the purview of the statute as construed in the *Alba* and *Robinson* cases, we would proceed with statutory analysis, since our decision would be proper regardless of the ultimate holding of the Louisiana court. Whether the Bulgarians fall within the coverage of the long-arm statute as it read at the time of service, however, is unclear. Since 1984, service in this situation would appear to be proper under subsection (8) of the statute, dealing with manufacturers who introduce goods into the stream of commerce. That subsection provides:

Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream or commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.

One Louisiana appellate court has held this subsection to be retroactive, *McBead Drilling Co. v. Kressco, Ltd.*, 490 So.2d 674 (La.App.1986), but that holding has been cast in doubt by the Louisiana Supreme Court's decision to review the case. 494 So.2d 1164 (La.1986). That review pends.

*icopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1370 (5th Cir.1986).

The leading and controlling case on the subject is *World Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *World-Wide Volkswagen,* a regional automobile distributor for the northeast United States, and a New York area automobile dealer, objected to jurisdiction when they were sued in Oklahoma for an accident involving an automobile sold by them in New York. In finding no jurisdiction, the Supreme Court held that while it was foreseeable that cars sold by the defendants might be driven to Oklahoma and be involved in accidents there, foreseeability alone did not support jurisdiction.

> (T)he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the *defendant's conduct and connection* to the forum State are such that he should reasonably anticipate being haled into court there.

444 U.S. at 297, 100 S.Ct. at 567. (emphasis added)

■ As noted, the Bulgarians have had no intercourse with Louisiana, not even in the form of communications with anyone in the state. The visits to Louisiana ports by vessels built and marketed by them and the subject accident comprise the totality of their contacts. We perceive their visits and the accident in Louisiana legally indistinguishable from the foreseeability of the vehicle sold in New York being driven to Oklahoma and involved in an accident there. Neither suffices to ground jurisdiction.[8] We conclude that to subject the Bulgarians to the jurisdiction of the federal court in Louisiana because of the fortuity of a purchaser taking the vessel they built for brief visits to Louisiana, unsupported by any other contact, would offend the principles of due process.

---

8. Our holding today is consistent with prior decisions of this court applying the stream-of-commerce analysis. *See, Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081 (5th Cir.1984), and *Petroleum Helicopters, Inc. v.*

The trial court lacked jurisdiction over the Bulgarians and all orders and judgments adversely affecting or directed to the Bulgarians are accordingly vacated, and the matter is returned to the district court for entry of an appropriate judgment sustaining their challenge to the jurisdiction of the district court and dismissing the claims against them.

REVERSED.

*Avco Corp.*, 804 F.2d 1367 (5th Cir.1986). Each involved more direct and widespread distribution of products which came to rest in Louisiana.