Dorothy **BEARRY, et al.,**
**Plaintiffs-Appellees,**

v.

**BEECH AIRCRAFT CORPORATION,**
**Defendant-Appellant.**

**No. 86–2527.**

United States Court of Appeals,
Fifth Circuit.

June 3, 1987.

Thomas M. Farrell, Gerald L. Bracht, Mayor, Day & Caldwell, Houston, Tex., for defendant-appellant.

Joseph L. Lemoine, Jr., Lafayette, La., Larry P. Boyd, Wayne Fisher, Houston, Tex., for Helen N. Mills, et al.

Before POLITZ, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This case presents the question whether the Constitution prohibits the exercise of jurisdiction by a Texas court over a nonresident defendant for claims having no relation to Texas, solely because a large quantity of products manufactured by the defendant, Beech Aircraft Corporation, has flowed into Texas during the past five years. We granted leave to appeal the district court's denial of Beech's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to Mississippi, a motion resting on the assertion that the district court erroneously employed the concept of "stream of commerce" to find that Texas had general jurisdiction over Beech—that Texas can exercise personal jurisdiction over Beech for any claims asserted against it. We reverse.

I

Lonnie H. Bearry and Alva R. Mills, both Louisiana residents, bought a Beech aircraft in Louisiana. On July 9, 1983, both were killed when the plane crashed outside of McComb, Mississippi, in a flight from McComb to Baton Rouge, Louisiana.

Mills' survivors first sued Beech in Louisiana, but that suit was dismissed for lack of personal jurisdiction under the Louisiana long-arm statute. The survivors of both decedents filed separate suits against Beech in Texas state court,[1] claiming that the plane crash was caused by the defective design of the plane's throw-over yoke and Beech's failure to adequately warn or instruct regarding this danger.

After the suits were removed to federal court and consolidated, Beech moved to dismiss for lack of personal jurisdiction or venue, or in the alternative, to transfer venue to Mississippi. Beech is neither registered in nor a citizen of Texas. The only statutory peg for jurisdiction, then, is the Texas long-arm statute, Tex.Civ.Prac. & Rems.Code Ann. §§ 17.041–.043 (Vernon 1986). As many, Texas courts have read the Texas long-arm statute as reaching to the limits of due process. *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

According to the evidence before the district court, Beech is a Delaware corporation with its principal place of business in Kansas, designing, manufacturing and selling airplanes and related products. Its design, testing, manufacturing, sales and warehouse facilities are located in Kansas, Colorado, and Alabama. Beech has never qualified to do business nor maintained an agent for service of process in Texas. Beech has no telephone listing in Texas; it has no warehouse or manufacturing facilities and has never had a bank account in Texas, nor has it insured any person in Texas; it owns no real estate in Texas; it has not paid taxes to the State of Texas; it has no employees or directors who are permanently assigned to work in Texas.

There was also evidence that from 1980 to 1985, Beech engaged in a nationwide marketing campaign, employing over 300 marketing employees at its Kansas office. During this five year period, nearly $250 million of Beech manufactured products flowed to seventeen independent Texas dealers from sales carefully negotiated and completed in Kansas. One of the dealers, Hedrick Beechcraft—Houston, Inc., is

---

1. Mills' survivors have also filed nearly identical suits against Beech in Mississippi and Kansas. These suits are still pending.

a wholly owned subsidiary of Beech Holdings, Inc., a Beech subsidiary. However, because Hedrick Beechcraft is operated as a distinct corporation, the district court properly held that its contacts with Texas could not be imputed to Beech. Beech also manufactured airframe assemblies for Bell Helicopters in Fort Worth, Texas, under contracts exceeding $72 million with all products delivered to Bell "F.O.B. Wichita." Furthermore, Beech representatives visited the Texas dealers on occasion to assist them with maintenance problems, to demonstrate new aircraft, and to offer sales incentives to the Texas dealers, but only at a dealer's request.

The flow of goods also ran to Beech who purchased over $195 million of goods and services from over 500 Texas vendors under sales agreements with Texas dealers carefully negotiated in Kansas, with delivery of all goods accepted in Kansas.

Finally, the evidence established that plaintiffs' plane was not designed or manufactured in Texas, had never been owned by a Texas resident, and had never been repaired in or serviced in Texas. None of the plaintiffs or their decedents was domiciled in Texas. In short, no one argues that this lawsuit relates in any way to Beech's contacts with Texas.

Nonetheless, the district court denied Beech's motion to dismiss for lack of personal jurisdiction because, as it explained:

> Beech has created a stream of commerce with Texas that is so continuous and systematic and of such enormous volume that Beech has established a general presence within the State for purposes of *in personam* jurisdiction.

The district court then denied the alternative motion to transfer. Recognizing the novelty and importance of its decision, the district court certified the jurisdiction issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we granted the requested leave to appeal.

## II

■ We first ask whether Texas law authorizes process on these facts and, if so, whether its effort reaches beyond constitutional limits. These two inquiries collapse into one, however, given Texas' effort to reach as far as constitutionally allowed.

Because the interests of Texas and the plaintiffs in trying this lawsuit in Texas are so slight, we are persuaded that maintenance of this suit in Texas would be unfair and unreasonable. In this approach we indicate two interests that, while often overlapping, are nonetheless distinct. First, there are the federalism concerns of state sovereignty—in which we inquire about the power of one state to subject to its process the citizen of another state. The restriction on state sovereign power limits the power of a state to *compel* a citizen of a sister state to submit to its process. This restriction does not affect the subject-matter jurisdiction of the state's courts—the power to *adjudicate* the matter once consent is given. Accordingly, nonresidents may consent to litigation in a foreign state without raising federalism concerns. While the Supreme Court suggested otherwise in *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982), it retreated from this position in *Asahi Metal Ind. v. Superior Court*, —— U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), requiring consideration of "the shared interest of the several states in furthering fundamental substantive social policies." *Id.* 107 S.Ct. at 1034 (quoting *World-wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)). To hold otherwise either confuses the distinction between the power to compel and the power to adjudicate or disregards our federalist structure. Second, there is the personal right to due process secured by the fourteenth amendment.

Both are limits upon state power—limits that are defined by similar inquiries into fairness to the nonresident defendant. Nonetheless, it bears mention that the origin of the limits are different and their occasional coincidence of inquiry can diverge, particularly as both the interests of the forum state and the relative inconvenience of the defendant to proceed in the

forum become slight. One is a limit upon states implicit in their very membership in the federation enforceable by residents. The other is the positive right running to persons from the due process clause itself.

### A. Minimum Contacts.

#### (1)

█ The due process clause limits the power of a state to assert personal jurisdiction over a nonresident defendant. Its requirements are satisfied when the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). In evaluating these contacts with the forum, we must determine whether the nonresident has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

█ When the cause of action relates to the defendant's contact with the forum, the "minimum contacts" requirement is satisfied, and "specific" jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980). If the contact resulted from the defendant's conduct and created a substantial connection with the forum state, even a single act can support jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2184 n. 18, 85 L.Ed.2d 528 (1985); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). When the contact stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state. *World-Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567, 62 L.Ed.2d 490.

█ When the cause of action does not arise from or relate to the foreign corporation's purposeful conduct within the forum state, due process requires that there be *continuous and systematic contacts* between the State and the foreign corporation to support an exercise of "general" personal jurisdiction by that forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). More contact is required with the forum state because the state has no direct interest in the cause of action. In *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 447–48, 72 S.Ct. 413, 419–20, 96 L.Ed. 485 (1952), the Supreme Court held that a Philippine mining corporation that operated part of its general business out of Ohio during World War II because of the Japanese occupation of the Philippine Islands had continuous and systematic contacts with Ohio. The president of the Philippine corporation kept his wartime office in Ohio. He kept company files there, and held directors' meetings there. He carried on corporate correspondence from his Ohio office and deposited corporate funds in two Ohio bank accounts. Finally, he engaged an Ohio bank to act as the corporation's transfer agent, and supervised the rehabilitation of the corporation's Philippine properties from Ohio.

In *Hall,* the Supreme Court found the defendant's contacts with the State of Texas insufficient to support an exercise of general personal jurisdiction by that state's courts, even though the defendant had ventured to Texas to negotiate a contract, had purchased helicopters and related equipment from Texas vendors at regular intervals, and had sent prospective pilots and other personnel to Texas for training. 104 S.Ct. at 1870. According to the Supreme Court, these contacts did not "constitute the kind of continuous and systematic general business contacts the Court found to exist in *Perkins.*" 104 S.Ct. at 1873.

### (2)

■ After reviewing the requirements of due process, the district court found, without supporting citation, that

where a defendant continuously and systematically injects an enormous stream of commerce into the forum, that as a matter of economic and physical reality it conducts a significant portion of its general business affairs within the forum. Moreover, where a defendant's commercial transactions in the forum are continuous and systematic and enormous in volume, it has availed itself of the privilege of doing business in the forum and the protection of the laws of the forum to the extent that it can fairly anticipate the forum's exercise of general jurisdiction over it. Furthermore, where a defendant conducts such extensive activities in the forum, the forum has an interest in the defendant's conduct generally and in providing a forum for any and all claims against the defendant. Thus, where a defendant has continuously and systematically injected an enormous stream of commerce into the forum, it is subject to general *in personam* jurisdiction in the forum.

We disagree with the district court's conclusion that the "stream of commerce" will support a finding of general jurisdiction. In specific jurisdiction cases, the defendant may have, at a minimum, one contact with the forum state—the product or conduct that caused injury there. A conclusion that there is a stream of commerce ensures that the contact that caused harm in the forum occurred there through the defendant's conduct and not the plaintiff's unilateral activities; it does not ensure that defendant's relationship with the forum is continuous and systematic, such that it can be sued there for unrelated claims.

The dimension of the "stream of commerce" doctrine now divides the Supreme Court. *Compare Asahi Metal Ind. v. Superior Court,* — U.S. ——, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (O'Connor, J.)

*with id.* 107 S.Ct. at 1035 (Brennan, J., concurring in part and in the judgment). The uncertainty of the Court aside, *Asahi* does not support the district court. *Asahi* involved a question of specific jurisdiction. The indemnity dispute before the Court arose from defendant's contacts with the forum state. Nothing in *Asahi* signaled that the Supreme Court wished to eliminate the distinction between specific and general jurisdiction, recognized as recently as its opinion in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985).

The notion of general jurisdiction is based on a concept of "exchange." The language of exchange captures both the sovereign interest of the state and the interest of the person in a fairly accessible forum. It accommodates both by invoking constructive consent. That is, by invoking the benefits and protections of the forum's laws, the nonresident defendant is seen as "consenting" to being sued there. But Beech's alleged contacts with Texas will not support a finding of continuous and systematic contacts on which general jurisdiction could be based. They will not sum to the general business presence found to exist in *Perkins.*

The district court characterized the sales made by Beech to Texas dealers as occurring *in Texas,* even though all such sales were negotiated in and completed in Kansas; it also characterized the seventeen independent dealers as "Beech retailers," implicitly attributing their activities to Beech,[2] despite Beech's lack of control over their operations. And the district court found that the enormous stream of commerce injected by Beech into Texas established a general presence within that state. On the basis of these activities, the district court found that "[Texas] has an interest in the defendant's conduct generally and in providing for a forum for any and all claims against the defendant."

But Beech exercised its right to structure its affairs in a manner calculated to

---

**2.** Although the district court noted that the activities of the independent dealers could not be attributed to Beech, it found the existence of the distribution system in Texas to establish conduct by Beech within that forum.

shield it from the general jurisdiction of the courts of other states such as Texas, carefully requiring the negotiation, completion, and performance of all contracts in Kansas. Beech has not afforded itself the benefits and protections of the laws of Texas, but instead has calculatedly avoided them.

Despite Beech's obvious intent to exercise its due process rights, the district court concluded that Beech's efforts to avoid the general jurisdiction of the Texas courts were ineffective. It found the fact that all Beech contracts were formed and performed in Kansas to be inconclusive, citing several specific jurisdiction cases which held that jurisdiction does not depend on the technicality of when title passes to goods. *See Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1126 (7th Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 197 & n. 8 (5th Cir.1980). We are not aware that other courts have disregarded the structure of transactions in support of general jurisdiction. And, we have held such "technicalities" relevant in analyzing general personal jurisdiction questions. *See, e.g., Smith v. Piper Aircraft Corp.*, 425 F.2d 823, 826 (5th Cir.1970).

Moreover, that Beech has engaged in a nation-wide advertising program does not support a finding of general jurisdiction. In *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 169 (5th Cir.1986), we found national advertising indicated that the defendant had "made no attempt to limit the states in which its product was marketed." *Id.* (quoting *Vault Corp. v. Quaid Software, Ltd.*, 775 F.2d 638, 640 (5th Cir.1985)). Accordingly, because the defendant had a distribution network within the state, advertised in the state, and sold a substantial amount of its product in the state, we found the defendant was subject to the Louisiana long-arm statute. *Id.* at 170. However, in *Oreck*, unlike this case, the cause of action related to the defendant's contacts with the forum.

The district court also noted that Beech would be subject to specific jurisdiction in Texas if a contractual dispute resulted between Beech and a Texas dealer and that through its Texas distribution network, Beech had availed itself of the privilege of acting in Texas. Probably so, but that Texas would have specific jurisdiction over a dispute arising from one of Beech's contacts with Texas does not control the inquiry into general jurisdiction. Moreover, distributors selling Beech manufactured products for their own account do not create minimum contacts sufficient to warrant general jurisdiction over Beech. Beech has no office in Texas, has no agents in Texas, and has no control over the Texas dealers. As such, Beech is not "doing business" in Texas. *See Piper Aircraft*, 425 F.2d at 826.

In short, that Beech products flow into Texas does not create a general presence in that state. Each transaction was completed outside of Texas. The laws of Texas neither protected nor benefited Beech.

And contrary to plaintiffs' assertions, our recent decision in *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987), does not otherwise support a finding of "continuous and systematic" contacts. In *Holt*, we found such contacts where: (1) the defendant attended college and was formerly employed in the forum; (2) the defendant owned real estate in the forum; (3) the defendant travelled frequently to the forum, both for recreational purposes and to visit his children; (4) the defendant conducted a great deal of business in the forum. On the basis of extensive personal and business connections between the defendant and the forum state, we affirmed a finding of minimum contacts, although recognizing that each contact alone would not justify jurisdiction. *Id.* However, unlike the present case, the cause of action in *Holt* related to one of the defendant's general contacts with the forum. While this connection was held insufficient to support an exercise of specific jurisdiction in *Holt*, we found it relevant to our determination of minimum contacts. *Id.* Moreover, unlike Beech, the defendant in *Holt* conducted substantial business activities in the forum,

thereby invoking the benefits and protections of the forum's laws.

### B. Fairness.

■ Even if Beech's connections with the State of Texas could be said to be continuous and systematic, we are persuaded that the exercise of general jurisdiction in this case would not be fair and reasonable. *See Asahi Metal Ind. v. Superior Court,* —— U.S. ——, 107 S.Ct. 1026, 1036, 94 L.Ed.2d 92 (1987) (Brennan, J., concurring in part and in the judgment) (five justices, including Justice Brennan, agreed on this point). In evaluating the reasonableness of the exercise of jurisdiction, *Asahi* instructs us to look at the following factors: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the interests of the several states. *Id.* 107 S.Ct. at 1034.

In this case, the burden placed upon the defendant is real, certainly relatively so, although admittedly not severe enough to overcome an assertion of specific jurisdiction. But the realistic burdens to the litigants is not the sole determinant. As we pointed out, due process also captures the limits of Texas' process. The realistic burdens of plaintiffs and Beech aside, this suit implicates virtually no distinct interest of Texas. As we explained, Beech has never been qualified to do business in Texas. It owns no property in Texas, and has no facilities in Texas. Beech has no office or agent in Texas. Yet, Beech is asked to defend a lawsuit there, away from a plane crash in Mississippi brought by representatives of the deceased Louisiana residents.

Nevertheless, the district court found that Beech's injection of commerce into Texas had given Texas a general interest in Beech's conduct. According to the district court, Texas has an "interest in the quality and safety of the products Beech manufactures because so many of Beech's products come into the state," and because "many of the components of [Beech's] products come from Texas and thus the crash of a Beech aircraft may result in a Texas resident being called to answer for its product's condition."

The concerns that injuries might occur in the state or might somehow implicate Texas component-part manufacturers are adequately protected. Beech is subject to the specific jurisdiction of Texas courts when its product causes injuries or when it breaches a contract in Texas. Assertion of such broad interests do not suffice, however, to override the burdens placed upon Beech by this lawsuit.

Nor do the plaintiffs have a distinct interest in the lawsuit proceeding in Texas rather than another state. Plaintiffs are residents of Louisiana, and they have not pointed to any witnesses or other evidence located in Texas. Indeed, Mills' survivors have suits now pending in Kansas and Mississippi.

Finally, as *Asahi* instructs us, we must look at the interests of Kansas and Mississippi "in the efficient judicial resolution of the dispute and the advancement of substantive policies." 107 S.Ct. at 1034. Both Kansas and Mississippi have stronger interests in this case than Texas. Kansas is the home of the defendant; it has an interest in the manner in which Beech conducts its general affairs. Mississippi is the locus of the injury; it has an interest in providing a forum to persons who are injured there. And all states have an interest in predictability of jurisdiction, in a legal system that allows the citizens of those states to structure their transactions to limit their amenability to suits in foreign states.

### III

We are persuaded that the district court erred in not granting Beech's motion to dismiss for lack of personal jurisdiction. We therefore REVERSE and REMAND with instruction to decline jurisdiction and dismiss the case.

REVERSED and REMANDED.