**Obey SIMMONS, Sr. & Priscilla Sue Simmons**

v.

**SEATIDE INTERNATIONAL, INC.**

**Civ. A. No. 87-3551.**

United States District Court, E.D. Louisiana.

Sept. 7, 1988.

732 F.2d 1215, 1216 n. 2 (5th Cir.1984) (per

Harold M. Wheelahan, III, Ungar & Wheelahan, New Orleans, La., for plaintiffs.

Richard O. Kingrea, Gelpi, Sullivan, Carroll & Laborde, New Orleans, La., for Sea-Tide Intern., Inc.

J. Clayton Davie, Jr., Johnson & McAlpine, New Orleans, La., for third-party defendant Jay Bludworth, Inc.

*Order and Reasons*

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on June 22, 1988 for hearing on motion of curiam).

third-party defendant Jay Bludworth, Inc. to dismiss [for lack of personal jurisdiction and for improper venue]. Defendant/third-party plaintiff, SeaTide International, Inc., has opposed the motion; plaintiffs, Obey Simmons Sr. and Priscilla Sue Simmons, have not. For the following reasons, the Court now GRANTS the motion.

## I.

### A.

Obey Simmons was an alleged crewmember on a vessel owned and operated by his employer, SeaTide International, Inc. On April 20, 1987, Mr. Simmons allegedly injured his back by slipping on hydraulic fluid on the deck of the vessel, while the vessel was being repaired by Jay Bludworth, Inc. at Bludworth's facility, which is near Corpus Christi, Texas.

■ Asserting claims of Jones Act negligence and general maritime unseaworthiness, Mr. Simmons and his wife, Priscilla Sue Simmons, filed suit in this Court on July 20, 1987 against SeaTide. Plaintiffs have explicitly denominated their claims as ones being brought under F.R.Civ.P. 9(h).[1]

According to their complaint, Mr. and Mrs. Simmons are both residents of Mississippi. While the record does not reveal SeaTide's principal place of business, Sea-Tide states that it is incorporated under Louisiana law; SeaTide has filed in this district for protection under Chapter 11 of the Bankruptcy Code.[2]

On February 2, 1988, the Magistrate granted SeaTide leave to file a third-party complaint under F.R.Civ.P. 14(a) and 14(c) against Bludworth. Asserting that Bludworth is answerable for plaintiffs' claims against SeaTide, SeaTide seeks indemnity and/or contribution and a defense from Bludworth.

Bludworth then moved to dismiss the third-party complaint against it on the ground that this Court lacks personal jurisdiction over it. When the motion first came before the Court for hearing, the Court granted the request by SeaTide to postpone consideration of the motion until after SeaTide had an opportunity to take discovery from Bludworth on this single issue.[3] After this discovery was completed, the Court heard oral argument on the motion and took the motion under submission.

### B.

According to the uncontradicted affidavit and deposition by Bludworth's president,[4] the following are facts: Bludworth was incorporated under Texas law around 1980 and has its only place of business in Texas. Bludworth has no corporate or partnership subsidiaries or affiliates. Bludworth's president owns 90% of the Bludworth stock, and his son owns the remaining 10%; neither person has ever lived in Louisiana.

The deposition further reveals the following: Bludworth's business consists solely of operating a ship repair facility on the Corpus Christi Ship Channel in Nueces County, Texas. Bludworth has no offices

---

1. Plaintiffs have demanded a jury. As the complaint now stands, the jury demand must be struck, for jury demands are to give way whenever a plaintiff makes a 9(h) designation. *See Truehart v. Blandon*, 685 F.Supp. 956, 959 (E.D. La.1988) (citing *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249 (5th Cir.1975)). In accord with this Court's usual practice, this Court gives plaintiffs a reasonable opportunity to amend their complaint to remove the 9(h) designation. *E.g., id.; Forbes v. A & P Boat Rentals, Inc.*, 693 F.Supp. 476, —— (E.D.La.1988). Accordingly, the Court shall automatically strike the jury demand, unless within 10 days of the entry of this order, plaintiffs amend their complaint to remove the 9(h) designation.

2. The Bankruptcy Court has granted a partial lifting of the automatic bankruptcy stay under 11 U.S.C. § 362 in order for plaintiffs to liquidate their claims against SeaTide.

3. *See* Minute Entry of Apr. 13, 1988 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Skidmore v. Syntex Laboratories, Inc.*, 529 F.2d 1244 (5th Cir.1976); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1351, at 566–67 (1969)).

4. The president of Jay Bludworth, Inc. is J.L. Bludworth; to avoid confusion, the Court refers to the company as "Bludworth" and to the person as "Bludworth's president."

or facilities other than this one. All of Bludworth's work is done exclusively at this facility, and the agreements for repair work, which are usually oral, are negotiated at this facility. All of Bludworth's records, files, correspondence, and other documents relevant to its operations are kept at this facility. Bludworth has never advertised in any newspaper, trade journal, or other publication, except for a single ad it once placed in 1982 in a local journal, *The Port of Corpus Christi.* Further, it has never hired or maintained any marketing entity to market or advertise Bludworth to ship companies; instead, it obtains business by word of mouth.

The deposition also reveals the follows: Bludworth does not and has never maintained an agent, office, telephone number, or bank account in Louisiana, nor is it or has it ever been authorized to do or been doing business in Louisiana. Nor has it ever sent any crews into Louisiana to do any work of any kind. Further, it has no movable or immovable property, funds, or other assets of any nature in Louisiana and has never invested money in Louisiana. Nor has it ever lent any assets to anyone in Louisiana. Bludworth has no legal interest in any entity incorporated in, qualified to do business in, or doing business in Louisiana.

SeaTide's discovery efforts reveal the following additional facts, which show perhaps relevant contacts with Louisiana:

(1) A former Bludworth foreman made a single trip to Morgan City, Louisiana in 1983 to "call[ ] on the customers that [Bludworth] knew of, or prospective customers." Dep. at 17:11–:12. He was, however, not authorized to enter into any contracts on behalf of Bludworth. Dep. at 58:24–59:8. Whether the trip helped Bludworth's busi-

ness, Bludworth's president did not know. Dep. at 25:19–:20.

(2) Bludworth's phone bills since 1986 show a few hundred calls to numbers throughout southern Louisiana.[5] In his deposition, Bludworth's president explained that many of these calls were personal calls (for example, calls by him to his daughter in New Orleans or calls by vessel crew members calling home in Louisiana) or otherwise "non-Bludworth" calls (for example, calls by customers to their offices in Louisiana). Dep. at 50:1–:14. He estimated, however, that Bludworth itself would make a business call into Louisiana about once every two-to-three weeks; the purposes of these business calls would vary. Dep. at 50:19–51:5. Some of these calls were "possibly" for ordering marine hardware. Dep. at 51:6–:9. It is "possible" that Bludworth's president made telephone solicitations at times, but he could not recall ever having made any. Dep. at 51:10–52:16.

(3) According to an unsigned, 3–page list prepared on Bludworth stationery, Bludworth has entered into contracts with or performed work for 56 "Louisiana based companies." This list, however, give no dates or other descriptions of any kind and does not otherwise explain any aspect of Bludworth's relationship with any of these companies.

(4) Sixteen invoices totalling just over $105,000 and dating from February 3, 1983 to May 19, 1988 have been sent by Bludworth to various companies with Louisiana mailing addresses.[6] *See* SeaTide's Supplemental Opposition to Bludworth's Motion, Exh. C. Among these is one for $1,337.26 and dated May 22, 1984; typed on the invoice is the following: "To prepare vessel for towing from Corpus Christi, Texas to

---

5. Upon quick review of these bills and noting the familiar "589" prefix, the Court finds a good many of these calls were to federal government offices in New Orleans.

6. There were 7 invoices in 1988 totalling $13,854.18, 1 in 1987 totalling $7,762.42 (the one to SeaTide), none in 1986 or 1985, 4 in 1984 totalling $75,598.50, and 4 in 1983 totalling $8,537.00. Along with these invoices, SeaTide

has also submitted a $4,762.42 invoice to Zapata Gulf in Houston, perhaps because the following notation appears on the invoice: "Employed hot-shot service truck to deliver cylinder to Hydradyne Hydraulics in New Orleans, La." A closer review of the invoice reveals that Bludworth used the services of a third company for transportation of the cylinder to New Orleans. *See also* Dep. at 40:2–41:9.

Lockport, La. as instructed by owner." [7] *See id.* (Invoice No. 1496).

(5) Six invoices totalling $6,628.21 and dating from August 9, 1984 to April 27, 1987 show that Bludworth has bought certain supplies from companies with Louisiana addresses.[8] *See id.,* Exh. E. Three additional invoices totalling $1,863.50 and dating from May 31, 1984 to October 15, 1987 show that three Louisiana companies have furnished labor and services to Bludworth.[9] *See id.*

## II.

■ If a nonresident defendant protests the exercise of personal jurisdiction, the burden falls on its opponent to make a *prima facie* showing that personal jurisdiction exists. *E.g., Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir.1987). The issue, then, is whether SeaTide has made a sufficient showing to necessitate an evidentiary hearing.

■ A federal court may exercise personal jurisdiction over a nonresident defendant only if (absent a controlling federal statute of which there is none here) state law confers such jurisdiction and only if the exercise of such jurisdiction comports with due process under the Constitution. *See Interfirst Bank Clifton v. Fernandez,* 844 F.2d 279, 282 (5th Cir.1988), *amended on other grounds on denial of reh'g,* 853 F.2d 292 (5th Cir.1988). Notwithstanding the admiralty setting, the due process standard

of the Fourteenth Amendment applies in this case. *Bayou Steel Corp. v. M/V AMSTELVOORN,* 809 F.2d 1147, 1150 (5th Cir.1987) (citing *Point Landing, Inc. v. Omni Capital International, Ltd.,* 795 F.2d 415 (5th Cir.1986) (en banc), *aff'd sub nom. Omni Capital International v. Rudolf Wolff & Co.,* — U.S. —, 108 U.S. 404, 98 L.Ed.2d 415 (1987)); *see also Petroleum Helicopters, Inc. v. Avco Corp. (Petroleum I),* 804 F.2d 1367, 1369–71 (5th Cir.1986) (applying in this admiralty matter the same constitutional tests for asserting personal jurisdiction that are generally applied to state courts and to federal diversity cases).

Because the Louisiana long-arm statute as amended last year, *see* La.Acts 1987, No. 418, *amending* La. RSA § 13:3201 (eff. Sept. 1, 1987), extends to the limits of due process, *Petroleum Helicopters, Inc. v. Avco Corp. (Petroleum II),* 834 F.2d 510, 514 (5th Cir.1987) (opinion of La.Sup.Ct. on certified question from the 5th Cir.), and applies equally to causes of action accruing before the effective date of the amendment, *id.* at 511 (per curiam op. of 5th Cir.), 514–15 (op. of La.Sup.Ct.), this Court need only consider whether personal jurisdiction over Bludworth satisfies federal constitutional requirements. *Interfirst Bank,* 844 F.2d at 282; *see also Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 372 (5th Cir. 1987).

The Supreme Court's progeny of *International Shoe* [10] has divided this inquiry

---

7. A close review of this invoice shows that at most, Bludworth only prepared the vessel for towing; it did not tow the vessel to Louisiana.

8. These break down as follows: one dated 4/27/87 for $145.00 for paint; one dated 12/19/86 for $556.14 for paint; one dated 11/12/85 for $70.32 for hardware supplies; one dated 7/09/85 for $144.17 for coating; one totalling $174.18 and paid 2/05/85 and otherwise illegible; and one dated 8/09/84 for $4241.40 for a boat shaft.

9. These break down as follows: one dated 10/15/87 for $1,686 "to install Selbalux–31 on vessel as directed"; one dated 11/11/85 for $127.50 for shipping; and one dated 5/31/84 for $50 hooking up power service in Robert, Texas.

10. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Trav-*

*elers Health Ass'n v. Virginia,* 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Helicópteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

into two parts: whether the defendant purposefully established "minimum contacts" with the forum state and, if so, whether the exercise of jurisdiction results in "fair play and substantial justice." [11] *Interfirst Bank,* 844 F.2d at 282.

Courts continue to struggle with developing a coherent, usable standard for adjudicating whether a court may properly exert personal jurisdiction over a defendant. At the base of this effort are two dissimilar conceptions of personal jurisdiction: one based on the sovereignty and power of states, and one based on the burdens and convenience of individuals. *See* Note, *Federal Practice and Procedure: Personal Jurisdiction and Class Action,* 1986 Am. Surv.Am.L. 51, 51–52. *Compare Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 722, 24 L.Ed. 565 (1877) *with Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940).

With its decision in *International Shoe,* the Supreme Court rejected the conception of personal jurisdiction based solely on notions of state sovereignty. But in no way has the Court abandoned this conception as a partial basis for its decisions on personal jurisdiction. *See, e.g., Bearry,* 818 F.2d at 373 (citing *Asahi,* 480 U.S. at 114–15, 107 S.Ct. at 1034). The Court continues to explain its holdings on grounds of fairness by looking at burdens and convenience to the parties *and* at interests of the states in the litigation. The amount of emphasis the Court has placed on one of these conceptions of personal jurisdiction over the other continues to fluctuate, and therein lies the source of much of the ongoing dispute

about the understanding of personal jurisdiction.

Like most area of unsettled law, the instant issue could easily justify a full discussion of scores of pages. Rather than attempt to write as much—especially since this Court's opinion has no force of binding precedent on anyone other than the instant parties before the Court in this matter— however, this Court limits itself to the discussion below.

### III.

If there was ever a localized business in the marine industry, it is Bludworth. Its sole operations are in Corpus Christi; it does not advertise; it does no work outside of Texas; it owns no property out of Texas; its family owners live in Texas. In the ordinary, layman sense, Bludworth was not availing itself of Louisiana and its benefits; the few contacts it has had do not amount to "continuous and systematic" contacts with Louisiana.

The single trip five years ago by a former Bludworth employee certainly cannot be considered significant. *See Helicópteros,* 466 U.S. at 416, 104 S.Ct. at 1873 ("The one trip ... cannot be described or regarded as a contact of a 'continuous and systematic' nature"). It is even less significant than the trip at issue in *Helicópteros* (not to mention the regular stream of employees that the foreign defendant sent for helicopter training in Dallas), for there is no suggestion in the instant case that the

---

**11.** Courts continue to classify personal jurisdiction into two distinct groups: "specific jurisdiction" and "general jurisdiction." *E.g., Interfirst Bank,* 844 F.2d at 283 & n. 1; *Bearry,* 818 F.2d at 375; *Petroleum I,* 804 F.2d at 1370. *See generally Helicópteros,* 466 U.S. at 415 n. 10, 104 S.Ct. at 1873 n. 10. While these labels are often convenient rubrics, they are of little help for the very cases where the jurisdictional inquiry is the most difficult. The present issue is not resolved merely by describing any jurisdiction over Bludworth as being "general jurisdiction" or "specific jurisdiction."

Justice Stevens (along with perhaps Justices White and Blackmun) appears to suggest that the sole constitutional inquiry should be a balancing-of-interests test, without any separate inquiry into "minimum contacts." *See Asahi,* 480 U.S. at 122, 107 S.Ct. at 1038 (Stevens, J., concurring). Such analysis seems the ultimate conclusion of a specific-jurisdiction inquiry and further seems to hold that "general jurisdiction" has no place in any constitutional inquiry. This analysis, however, does not hold the majority view of the Supreme Court. Despite the present division in the Supreme Court over what constitutes significant minimum contacts in products liability cases, *compare id.* at 1031–33 (O'Connor, J., for 4–justice plurality) *with id.* at 1035–37 (Brennan, J., for 4–justice plurality), a clear majority of the Supreme Court adheres to the view that a "minimum contacts" test is a necessary part of the constitutional inquiry.

Bludworth employee's one-time trip had anything to do with SeaTide.

There is no suggestion that SeaTide went to Bludworth because of any advertisement or solicitation made by Bludworth, in Louisiana or elsewhere. That Bludworth and other Louisiana companies may occasionally choose to sent their vessels in the Corpus Christi area to Bludworth is, likewise, of little import. For these are unilateral acts over which Bludworth has no control.[12] *See Bearry*, 818 F.2d at 374 (quoting *World–Wide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. at 567–68). While Bludworth had done a minor amount of business with Louisiana companies (the record reveals that Bludworth has charged a mere $21,000 to Louisiana companies over the past three years), there is no positive evidence suggesting that Bludworth sought out any of these companies. SeaTide's unexplained list of phone calls to Louisiana from Bludworth's office is of little help, where as here there is no showing or suggestion that any of these calls had any connection with the alleged accident or this litigation.

If the numerous, money-making contacts of a large, national corporation like Beach Aircraft were insufficient to find the necessary "minimum contacts" in *Bearry*, then *a fortiori* the many fewer, less significant contacts of Bludworth with Louisiana cannot be sufficient.

The instant case is not a "stream of commerce" case where Bludworth's activities allegedly injured someone in another forum. The alleged accident occurred in Texas, at Bludworth's facility. Had Bludworth defectively repaired a vessel so that a subsequent accident on the vessel occurred in Louisiana, then perhaps Bludworth could properly be sued in Louisiana over that accident; such, however, is not the case here. As far as Bludworth is concerned, it was completely fortuitous that the vessel on which the alleged injury occurred was from Louisiana. Without more, it is insufficient to assert jurisdiction

over a defendant merely because it objectively knew that its work would be brought into other fora, at least when the cause of action at issue did not arise in any of these other fora. *See Asahi*, 480 U.S. 102, 107 S.Ct. 1026; *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 556; *Bayou Steel*, 809 F.2d at 1150. While Bludworth's customers and suppliers were not all Texas companies, it does not follow that Bludworth purposefully sought out a market beyond its local surroundings in south Texas.

Bludworth is not a company with permanent (or even occasional) agents selling a product (or otherwise doing business) in Louisiana, *contrast International Shoe*, 326 U.S. 310, 66 S.Ct. 154; *Travelers Health*, 339 U.S. 643, 70 S.Ct. 927, or a company that once carried on its operations in Louisiana, *contrast Perkins*, 342 U.S. 437, 72 S.Ct. 413, or a company that continually received money from a Louisiana resident under a single contract and otherwise dealt with that resident exclusively through his Louisiana address, *contrast McGee*, 355 U.S. 220, 78 S.Ct. 199, or a company that made significant money from the sale and advertisement of its products in Louisiana, *contrast Keeton*, 465 U.S. 770, 104 S.Ct. 1473; *Calder*, 465 U.S. 783, 104 S.Ct. 1482, or a company that entered into a long-term contract with a Louisiana company and expressly calling for application of Louisiana law, *contrast Burger King*, 471 U.S. 462, 105 S.Ct. 2174.

In sum, SeaTide has not made a *prima facie* case to warrant an evidentiary hearing; the record cannot support a finding that Bludworth "purposely availed itself of the privilege of conducting activities in the forum State." *Asahi*, 480 U.S. at 110, 107 S.Ct. at 1032 (Brennan, J., concurring) (quoting *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567) (quoting *Hanson v. Denkla*, 357 U.S. at 253, 78 S.Ct. at 1240). Thus, the Court holds that Bludworth has not had sufficient minimum contacts with Louisiana in order for this Court

---

**12.** Commenting perhaps on a political, philosophical truism, the Court observes that a rule of law to the contrary would, among other things, promote localism and isolationism in smaller family businesses and thus deter non-local commerce in all but the larger corporate entities.

to exert personal jurisdiction over it in this case.[13]

### IV.

For these reasons, the Court GRANTS Bludworth's motion. Expressly determining under F.R.Civ.P. 54(b) that there is no just reason for delay in the entry of judgment as to all claims against Bludworth, the Court hereby directs the Clerk of Court to enter judgment dismissing, without prejudice and at SeaTide's cost, all claims against Bludworth.

---

13. Holding as it does, the Court need not address the "fairness" part of the constitutional injury. The Court merely observes that the balancing test most recently enunciated in *Asahi, see also Bearry,* 818 F.2d at 377, contains many elements that do not wholly apply in a non-international maritime context.

Further, dismissing the claims against Bludworth, the Court need not address whether Sea-Tide's 14(c) tender was proper to the extent that SeaTide owes an arguably greater duty to Mr. Simmons under the Jones Act than does Bludworth under general maritime law or whether this Court could permit plaintiffs to amend their complaint in order to properly demand a jury once a proper 14(c) third-party demand is made.