**SUMMIT MACHINE TOOL MANUFACTURING CORP., Plaintiff,**

v.

**WARREN TRANSPORT, INC., Auto Transportes Fronterizos de Carga and National Continental Insurance Company, a Corporation, Defendants.**

**Civil Action No. L–93–82.**

United States District Court,
S.D. Texas,
Laredo Division.

Feb. 23, 1996.

New York City, Barry N. Gutterman, New York City, for defendant Warren Transport.

Dennis S. Boxeur, Kornfeld Franklin Renegar & Randall, Oklahoma City, OK, Wilburn L. Williamson, Dykeman Williamson & Williamson, Oklahoma City, OK, Barry N. Gutterman, New York City, for defendant National Continental Insurance Company.

J.C. Trevino, III, Laredo, TX, Dana Keith Martin, Hill Rivkins Loesberg, O'Brien, Mulray & Hayden, Houston, TX, Jim W. Lee, Lee Durocher Stratton & Mauritson, Oklahoma City, OK, for defendant Autotransportes Fronterizos de Carga S.A.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Autotransportes Fronterizos de Carga, S.A. de C.V.'s ("Fronterizos") Rule 12(b) Motion to Dismiss, filed September 28, 1993 (Docket No. 10). Although the Court previously denied the motion as to sufficiency of service of process, Fronterizos' personal jurisdiction challenge was never resolved.[1] In a Memorandum and Order, filed January 16, 1996 (Docket No. 116), the Court invited the parties to brief the issue of personal jurisdiction. All parties provided supplemental memoranda of law.[2]

### Legal Analysis

Two requirements must be met before a federal court can assert personal jurisdiction over nonresident defendants. First, the defendants must be amenable to service of process under the Texas long-arm statute; and second, the exercise of such jurisdiction under this statute "must comport with norms imposed by the due process clause of the fourteenth amendment." *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (5th Cir. 1990). Because the Texas long-arm statute, Tex.Civ.Prac. & Rem.Code Ann. §§ 17.041–.043 (Vernon 1986), is coextensive with the

Linda S. McDonald, Shaddox Compere Walraven & Good, San Antonio, TX, Richard C. Labarthe, Gary A. Bryant, Mock Schwabe Waldo Elder Reeves & Bryant, Oklahoma City, OK, David B. Schneider, Oklahoma City, OK, Enrique R. Cuellar, Laredo, TX, John H. Davis, San Antonio, TX, for plaintiff Summit Mach. Tool Mfg. Corp.

Jack L. Coke, Jr., Dallas, TX, Wilburn L. Williamson, Tracy A. Parks, Dykeman Williamson & Williamson, Oklahoma City, OK, Michael J. Carcich, Gutterman & Carcich,

**1.** See Court's Memorandum and Order of January 16, 1996 (Docket No. 116) for a complete procedural history of this case.

**2.** See Defendants NCI's and WTI's Memorandum of Law in Support of Personal Jurisdiction Over Fronterizos (Docket No. 118); Defendant Auto-transportes Fronterizos de Carga's Supplement to its Rule 12(B) Motion to Dismiss (Docket No. 119); and Response of Summit Tool Manufacturing Corp. to Autotransportes Fronterizos de Cargo de S.A. de C.V.'s 12(B) Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 120).

Due Process Clause of the Fourteenth Amendment, *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990), these two requirements merge into one: the Court's exercise of jurisdiction must comply with Due Process.

Due process is satisfied when the nonresident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Court must first determine whether the Defendant has "minimum contacts" with Texas. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292–93, 100 S.Ct. 559, 565–66, 62 L.Ed.2d 490 (1980). This inquiry may be divided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985).

■ Specific jurisdiction exists if the controversy "arises out of" the defendant's contacts with Texas. Even a single act may support specific jurisdiction where there is a "substantial connection" between the act and the forum state. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir.1993). General jurisdiction, by contrast, looks to the contacts between the defendant and the forum state to determine "whether they constitute the kind of continuous and systematic general business contacts" sufficient to meet due process requirements. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). General jurisdiction is based upon the concept of a bargain between the nonresident defendant and the forum state. If the defendant has established continuous and systematic general business contacts with the state, he is deemed to have purposely availed himself of the protections and benefits of the forum's law, and thereby to have consented to suit in

the forum. *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 375 (5th Cir.1987).

■ If minimum contacts are established, the Court then addresses the reasonableness or fairness of asserting personal jurisdiction over the Defendants. *Asahi Metal Ind. v. Superior Ct. of Cal.,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). The fairness of requiring a nonresident defendant to defend a suit in a distant forum depends upon several factors, including the burden upon the nonresident defendant, the interests of the forum state, the plaintiff's interest in securing relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Id.*

■ When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985). When, as here, the court considers the motion without an evidentiary hearing, the plaintiff need only present a *prima facie* case that personal jurisdiction exists over the defendant. *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.), *cert. denied* ——— U.S. ———, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). Thus, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id.* With this framework in mind, the Court will analyze Fronterizos' contacts with Texas.

*Application*

1. *Minimum contacts*

■ The underlying facts of this case relevant to the current inquiry are largely undisputed. Warren agreed to carry numerous loads of manufacturing equipment for Summit from Puebla, Mexico to Oklahoma City, Oklahoma. Fronterizos[3] carried the shipment on the Mexican leg of the journey from Puebla, Mexico to Nuevo Laredo, Mexico and across the border to Laredo, Texas.

---

3. Although it is disputed whether Warren or Summit actually hired Fronterizos, the determination of that fact is not necessary to this analysis.

Relying on the deposition testimony of its general manager and president, Jose Manuel Suarez Lopez, Fronterizos contends that it lacks sufficient contacts to subject it to the jurisdiction of this Court. (Docket No. 119 at page 4; exhibit A). Suarez testified that he resides outside the United States, travels to the United States only for his unrelated bread business, and that none of his employees travel to the United States for trucking-related purposes. (*Id.,* exhibit A at pages 16–20). Moreover, Suarez testified that Fronterizos buys the equipment necessary for its operations through the Mexican Centro de Servicios de Carga and that all its interchanges with American carriers are likewise handled by a Mexican consortium headquartered in Nuevo Laredo. (*Id.,* exhibit A at pages 23–25). Finally, Fronterizos uses only Mexican drivers and deals only with those American truckers having a trailer interchange agreement through the Mexican Central de Carga. (*Id.,* exhibit A at pages 26–27). From this testimony, Fronterizos concludes that its business "is confined to Mexico, and only because of the nature of the *trucking* business (that road carriages inherently must pass over boundaries) is there any **eventuality** that occurs in the United States." (*Id.* at page 5) (emphasis added).

According to Summit and Warren, it is precisely this "eventuality" that supports the exercise of specific jurisdiction over Fronterizos. (Docket No. 118 at pages 2–3; Docket No. 120 at pages 3–4). Warren emphasizes that Fronterizos admitted carrying all the cargo from Puebla, Mexico into Laredo, Texas. (Docket No. 118 at page 3 (citing Fronterizos' November 10, 1993 answer (Docket No. 19 at page 2))). Because Fronterizos actually entered Texas when delivering the shipments, Warren concludes that "it is entirely possible that the alleged damage occurred in the state of Texas while in Fronterizos' possession." (Docket No. 118 at page 3).

Summit also points to Fronterizos' contacts with Texas to support the exercise of specific jurisdiction. (Docket No. 120 at pages 4–5). Summit relies in part upon the deposition testimony of Richard L. Donnelly, Warren's Executive Vice President/Director of Operations. (*Id.,* exhibit E). Donnelly testified that Fronterizos picked up the trailers and securing equipment belonging to Warren in Laredo, Texas, and that Fronterizos drivers then carried the empty trailers and equipment to Puebla, Mexico for loading by Summit.[4] (*Id.,* exhibit E at page 46). Donnelly testified that after securing the equipment in Puebla, Mexico, Fronterizos brought the loads—now in Warren's trailers—to Warren's yard in Laredo, Texas.[5] (*Id.,* exhibit E at page 46). Once in Laredo, Fronterizos drivers removed the tarps from one load of the equipment before being instructed by Warren personnel that such actions were improper. (*Id.,* Exhibit E at page 163). Finally, Jesus Moreno testified that Fronterizos sent invoices for the Summit transport to Warren's office in Texas and subsequently picked up the checks for payment from the same office. (*Id.,* exhibit D at pages 73–76). From these contacts, Summit concludes that Fronterizos purposely availed itself of the privilege of doing business in Texas and, therefore, "should reasonably expect to be sued in that state for its activities." (*Id.* at page 5 (citing *Schlobohm,* 784 S.W.2d at 359)). Summit argues persuasively that Fronterizos, by making deliveries beyond the Mexican border into Laredo, Texas, elected to do business in Texas and therefore *should not now complain if a Texas court exercises jurisdiction.* (*Id.* at page 5).

Fronterizos attempts to minimize the importance of its border crossing by claiming that it did so at Warren's request and only as an "expediting move" to avoid the necessity of hiring an intermediate carrier. (Docket No. 119 at page 6). Fronterizos also propos-

---

4. Juan Jesus Moreno, Warren's terminal manager in Laredo, also testified that Fronterizos picked up the equipment necessary for the transportation of the machinery from Warren's Laredo yard before the Fronterizos drivers traveled to Puebla, Mexico to secure the machinery from Summit. (Docket No. 120, exhibit D at pages 23–25).

5. That Fronterizos transported the shipments into Laredo, Texas is also conceded by Jose Manuel Suarez Lopez. (Docket No. 120, exhibit A at page 11: "We were hired or contracted by Warren Transport to transport from Puebla—in the State of Puebla to Laredo, Texas.").

es a novel argument that because it stayed within a "25 mile free trade zone," the transport should be considered "only an extension of that Mexican movement" and therefore disregarded for jurisdiction purposes. (*Id.*). Instead of purposeful availment, Fronterizos characterizes its border crossing as "an enticement into the United States by Warren." (*Id.*). The Court is unpersuaded. Whether or not a part of Texas is legally a free trade zone, it is still a part of Texas. Whether or not Fronterizos was "enticed" to come to Texas, it nevertheless freely did so, presumably finding it economically advantageous. Because Summit's claims arise at least in part from Fronterizos' contacts with Texas, *i.e.*, the delivery and the transportation of the machinery on the Texas side of the border, exercising jurisdiction in a case stemming from those contacts is not contrary to due process.[6] Instead, that single, substantial act provides a sufficient basis from which to exercise jurisdiction. *See McGee* 78 S.Ct. at 201.

▆ Alternatively, as both Summit and Warren argue, personal jurisdiction would be supported on a theory of general jurisdiction. Both Summit and Warren point to Fronterizos' "continuous and systematic contacts with Texas." (Docket No. 120 at page 5; Docket No. 118 at page 3). Fronterizos filed a "Certificate of Registration of Foreign Motor Carriers," with the Interstate Commerce Commission, specifically authorizing it to do business in Texas. (Docket No. 120, exhibit B). Fronterizos transported more than 1700 loads of cargo to Laredo, Texas from January 1, 1990 to December of 1993. (*Id.*, exhibit C). Further, Fronterizos regularly conducts business with both Warren (*Id.*, exhibit A at page 12) and Melton Trucking, another Laredo-based Texas company (*Id.*, exhibit A at pages 69–71). For Warren alone, Fronterizos has transported 2,000 to 3,000 shipments. (*Id.*, exhibit A at page 62). In addition, Fronterizos received shipments, solicited business, negotiated and consummated contracts, and purchased equipment, such as tractors and flatbeds, in Laredo, Texas. (Docket No. 118, exhibit E at pages 56–57, 70). Thus, under either theory—general or specific—the exercise of personal jurisdiction over Fronterizos in this case comports with the first prong of the test for jurisdiction, *i.e.*, satisfies minimum contacts.

### 2. *Fairness*

In addressing the reasonableness or fairness of asserting personal jurisdiction, the following factors must be considered: (1) the burden upon Fronterizos to defend a suit in Texas; (2) the interests of the state of Texas in adjudicating the suit; (3) the interests of Summit and Warren in securing relief; and (4) the interest of the interstate judicial system in obtaining the most efficient resolution of this controversy. *See Asahi Metal,* 480 U.S. at 114, 107 S.Ct. at 1033.

▆ Fronterizos claims that defending this lawsuit in Texas would be burdensome because of the difficulty involved in getting witnesses and evidence from Mexico. (Docket No. 119 at pages 9–10). While procuring testimony from Mexican citizens undoubtedly poses some logistical challenges, those concerns do not—in the instant case—render the exercise of personal jurisdiction fundamentally unfair. Fronterizos' offices are located just across the Texas border in Nuevo Laredo, Mexico. It has shareholders who live in Laredo, Texas, and employees who routinely travel into Texas.[7] Further, Fronterizos regularly conducts business in Laredo, Texas.[8]

These factors combined with Texas' strong interest in adjudicating disputes arising from conduct and contracts performed at least

---

**6.** Fronterizos claims that Mexico is the only proper forum for this suit because "it is there they agreed to handle the cargo, under Mexican bill of lading provisions ... and under Mexican law." (Docket No. 119 at page 7). While such arguments may affect choice-of-law, they are of little importance in deciding whether it is proper for a Texas court to exercise jurisdiction, particularly in light of Fronterizos' activities across the border in Laredo, Texas.

**7.** *See* Docket No. 120, exhibit D at pages 73, 76 (Fronterizos employees travelled weekly to Warren's Laredo, Texas offices to pick up payment for the transportation).

**8.** *See* Docket n. 120, exhibit A at pages 56–57, 69–70.

partly in the state indicate that exercising personal jurisdiction over Fronterizos would not pose due process problems. Moreover, the interests of both Summit and Warren in obtaining relief weigh in favor of holding Fronterizos amenable to suit here. Finally, interests of efficiency in the interstate, or international, judicial system would be furthered by allowing all the parties to resolve their disputes in a single action.

Accordingly, Fronterizos' Rule 12(b) Motion to Dismiss for lack of personal jurisdiction (Docket No. 10) is DENIED.