TRANSPORTADORA EGOBA
S.A. DE C.V., Appellant,

v.

Jose Antonio ARREDONDO, Individually and As Personal Representative of the Estate of Miriam Arredondo, Deceased and As Personal Representative of the Estate of Jose Arredondo, Deceased; Edna Arredondo; Martha Arredondo, Individually and As Independent Administrator of the Estate of Juan Arredondo, Deceased, and As Independent Administrator of the Estate of Juana Arredondo, Deceased, and As Personal Representative of the

Estate of Selena Arredondo, Deceased, and As Next Friend of Ana Lidia Arredondo, Incompetent; Yesenia Arredondo; Georgina Arredondo; Delia Arredondo; and Albino Mena, Appellees.

No. 04–06–00292–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 25, 2006.

Karen L. Watkins, Emily Frost, Carlos R. Soltero, Patton G. Lochridge, McGinnis, Lochridge & Kilgore, L.L.P., Austin, Horace C. Hall, III, Hall, Quintanilla & Alarcon, L.C., Laredo, for appellant.

David W. Holman, John M. O'Quinn, O'Quinn, Laminack & Pirtle, Pete Mai, Tammy Tran, The Tammy Tran Law Firm, Houston, for appellees.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from the denial of appellant's special appearance. We affirm.

## BACKGROUND

Appellant, Transportadora Egoba S.A. de C.V. ("Egoba"), is a Mexican trucking company with its principal place of business in Queretaro, Mexico. On September 13, 2004, Jose Antonio Arredondo, Miriam Arredondo, Jose Arredondo, Juan Arredondo, Juana Arredondo, and Selena Arredondo left their home in Dimmitt, Texas for a family visit in Mexico. The next day, while in Mexico, the family was in their vehicle, which had come to a stop because of traffic congestion. While stopped, their vehicle was hit from behind by an Egoba truck. The force of the impact sent the Arredondo vehicle into another vehicle. The truck's driver fled the scene. Juan Antonio suffered substantial injuries, and Miriam, Jose, Juan, Juana, and Selena were killed. Appellees filed suit against Egoba in Webb County, Texas. Egoba filed a special appearance, which the trial court denied. This appeal by Egoba ensued.

## STANDARD OF REVIEW

A plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). However, the party contesting jurisdiction has the burden to prove the trial court lacks personal jurisdiction. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 807 (Tex.2002). On appeal, we review de novo the trial court's determination to grant or deny a special appearance. *Coleman,* 83 S.W.3d at 806; *BMC Software,* 83 S.W.3d at 794. Whether a court has personal jurisdiction over a defendant is a question of law. *Coleman,* 83 S.W.3d at 805–06; *BMC Software,* 83 S.W.3d at 794. However, to resolve the issue of jurisdiction, the trial court must frequently determine questions of fact.

*Coleman,* 83 S.W.3d at 806; *BMC Software,* 83 S.W.3d at 794. When, as here, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software,* 83 S.W.3d at 795. When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Id.*

## PERSONAL JURISDICTION

A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the United States Constitution and the Texas long-arm statute are satisfied. *CSR, Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig. proceeding). The Texas long-arm statute allows a Texas court to exercise personal jurisdiction over a nonresident defendant who does business in Texas, and the statute reaches as far as federal and state constitutional guarantees of due process allow. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *BMC Software,* 83 S.W.3d at 795; *CSR,* 925 S.W.2d at 594. Therefore, "the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations." *Id.* The due process clause permits a state to exert personal jurisdiction over a nonresident defendant only if the defendant has some minimum, purposeful contacts with the state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See Dawson–Austin v. Austin,* 968 S.W.2d 319, 326 (Tex.1998).

In analyzing minimum contacts, it is not the number but rather the

quality and nature of the nonresident's contacts with the forum state that is important. *See Oryx Capital Int'l, Inc. v. Sage Apt., L.L.C.,* 167 S.W.3d 432, 440 (Tex.App.-San Antonio 2005, no pet.). The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant that create a substantial connection with the forum state. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). However, the constitutional touchstone remains whether the nonresident defendant purposefully established minimum contacts in the forum state. *Id.* at 226–27. This requirement that a defendant purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. *Id.* at 226.

Foreseeability is also an important consideration in deciding whether the nonresident has purposefully established minimum contacts with the forum state. *Id.* at 227. The concept of foreseeability is implicit in the requirement that there be a substantial connection between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *Id.*

### General Jurisdiction

The minimum contacts analysis has been refined to two types of jurisdiction—specific and general. The parties agree that specific jurisdiction does not exist here; therefore, we focus on whether the trial court could exert general jurisdiction over Egoba. General jurisdiction exists when the defendant's contacts with Texas are continuous and systematic, even if the cause of action does not arise from or relate to activities conducted within Texas. *See CSR,* 925 S.W.2d at 595. The general jurisdiction analysis is more demanding than the specific jurisdiction analysis and requires a showing of substantial activity in the forum state. *See id.* "Minimum contacts are particularly important when the defendant is from a different country because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system." *Id.* at 595.

In this case, Egoba asserts its contacts with Texas are too attenuated to support general jurisdiction. We disagree. One of Egoba's directors, Pedro Alegria, lives in Laredo, Texas, and he receives some company mail at his Laredo home. Egoba's website promotes its services in Texas, including that it offers "40 transfer trucks at the cross-border area between Nuevo Laredo and Laredo, Texas for back and forth international freight movements." Egoba's long-haul trucks do not cross over into U.S. territory or haul freight between locations in Texas because Egoba does not have the proper permits to do so. However, Egoba's drayage trucks have the permits to cross into Texas; therefore, if an Egoba customer requests that its freight be picked up or dropped off in Texas, an Egoba drayage truck makes the run. Twenty to thirty Egoba trucks cross the border into Texas daily and drop off or pick up loads at yards in Laredo; traveling approximately 16,000 miles per month in Texas.

In order to cross the border into Texas, Egoba is required to obtain permits from the Texas Department of Transportation and it must have a registered agent in Texas. Alegria testified he is that agent. Alegria also said Egoba has drayage trucks because many U.S. companies do

not want to cross into Mexico. In the years between 2002 and 2004, Egoba had interchange agreements with a dozen companies to perform services in Texas on a routine basis.

Egoba has one U.S. bank account at a bank in Laredo, Texas. The Laredo account is for the convenience of Egoba's customers and to buy trucks. Alegria testified Egoba purchased gas in the U.S., but stopped a few years ago when the price of gas rose. Egoba owns an unimproved lot of land in Laredo, Texas on which it parks its trucks. Finally, within the past several years, Egoba has been a party to two lawsuits filed in Texas courts: Egoba was sued in an El Paso, Texas court and sought a change of venue to Webb County; and Egoba itself sued a Mexican customer in another Texas court to collect on a debt.

■ Any one of Egoba's contacts with Texas standing alone is not determinative of jurisdiction. However, determining the existence of personal jurisdiction does not involve an examination of each of Egoba's contacts with Texas viewed in isolation from one another. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir.1986). Rather, we are required to examine Egoba's contacts in toto to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process. *Id.* We conclude Egoba's contacts with Texas, as a whole, are continuous and systematic. *See Summit Mach. Tool Mfg. v. Warren Transp.*, 920 F.Supp. 722, 726 (S.D.Tex. 1996) (finding that minimum contacts had been met where defendant motor carrier transported 1,700 loads of cargo in a month to Laredo, Texas; transported 2,000–3,000 shipments to a Texas company; and received shipments, solicited business, negotiated and consummated contracts, and purchased equipment in Texas).

## Traditional Notions of Fair Play and Substantial Justice

■ Even when minimum contacts are established, a Texas court may not exercise jurisdiction over a nonresident defendant unless the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See CMMC v. Salinas*, 929 S.W.2d 435, 437 (Tex.1996). The Texas Supreme Court has stated that "[i]n this inquiry, it is incumbent upon the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Guardian Royal Exch.*, 815 S.W.2d at 231 (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174).

■ Thus, a defendant's contacts must be evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Guardian Royal Exch.*, 815 S.W.2d at 232. These factors include (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, and (3) the plaintiff's interest in obtaining convenient and effective relief. *Id.* "When the defendant is a resident of another nation, the court must also consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by a state court." *Id.* at 228. The unique burdens placed upon a foreign defendant who must defend itself in a foreign legal system carries significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. *Id.* at 229. The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. *Id.* "In every case, however, those interests, as well as the Federal Government's interest in its foreign relations policies, will be best

served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.* at 228–29.

■ Here, the accident occurred in Mexico, and did not occur as a result of Egoba's contacts with Texas. All witnesses to the accident are in Mexico, potential third parties who may be liable are in Mexico, all documents are in Spanish, the Egoba truck involved in the accident is impounded in Mexico, and the accident was investigated by Mexican authorities. In addition, on appeal, Egoba argued extensively that this court must consider the impact of a Texas court's jurisdiction over a foreign company whose business involves the facilitation of commerce between two countries. According to Egoba, "the significance of the drayage industry to the economies of both the United States and Mexico and to the foreign policy of the United States is . . . a crucial consideration in this case."

We do not dispute that the "North American Free Trade Agreement has resulted in a growing commercial interdependence between Texas and Mexico." *Transportacion Especial Autorizada, S.A. de C.V. v. Seguros Comercial America, S.A. de C.V.,* 978 S.W.2d 716, 722 (Tex. App.-Austin 1998, no pet.). Nevertheless, we are unpersuaded by Egoba's contention that forcing it to defend itself in Texas from liability for an incident that occurred in Mexico "would effectively be raising 'non-tariff barriers to trade' . . . [and] imposing a 'tort tax' on Egoba." *See Summit Mach.,* 920 F.Supp. at 726 (noting, as part of its minimum contacts analysis, that "[w]hether or not a part of Texas is legally a free trade zone, it is still a part of Texas."). Egoba freely does business in Texas and, presumably, finds doing so economically advantageous.

We also acknowledge the significant burden upon Egoba to defend itself in a foreign country concerning an incident that will involve proof of Mexican law and evidence that must be gathered in Mexico and presented in a Texas court. However, these burdens are not "unique," and once, as here, minimum contacts are established, the interest of the forum and the plaintiff often justify even larger burdens on the defendant. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). While procuring testimony from Mexican citizens and securing evidence that is in Mexico may pose logistical challenges, those concerns in this case do not render the exercise of personal jurisdiction fundamentally unfair. Egoba's contacts with Texas are extensive, one of its directors lives in Texas, and the company has availed itself of the Texas legal system in the past. These factors combined with Texas's strong interest in ensuring its citizens and residents are not deprived of a remedy if forced to adjudicate their claims in a foreign jurisdiction indicate that exercising personal jurisdiction over Egoba would not pose due process problems. *See Summit Machine,* 920 F.Supp. at 726 (finding the exercise of personal jurisdiction not fundamentally unfair because defendant's offices were located just across the Texas border in Nuevo Laredo, Mexico; it had shareholders who live in Laredo, Texas, and employees who routinely travel into Texas; and it regularly conducted business in Laredo, Texas).

## CONCLUSION

We conclude Egoba has minimum, purposeful contacts with the State of Texas and the exercise of jurisdiction will not offend traditional notions of fair play and

substantial justice. Therefore, we affirm the trial court's judgment.