Reversed and Remanded and Opinion
filed November 16, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-01072-CV



Grupo TMM, S.A.B., TMM Logistics, S.A. de C.V., and
Lacto Comercial Organizada, S.A. de C.V., Appellants

v.

Juan Gerardo Perez, Elizabeth Carolina Perez,
Individually and as the Representative of the Estate of Xochitl Carolina
Castillo Perez and the Estate of Xochitl Y. Perez Castillo, Christine Dolores
Perez, Felipe Manuel Perez, Maria Delores Castillo, AND RAYMUNDO PEINADO BOBADILLA,
Appellees



On Appeal from
the 334th District Court

Harris County, Texas

Trial Court
Cause No. 2008-49100



 

OPINION

This is an interlocutory appeal from the trial
court’s denial of the special appearances of three Mexican companies.  Because
we conclude that the trial court did not have personal jurisdiction over these
parties, we reverse the trial court’s judgment and remand with instructions to
dismiss this suit for lack of personal jurisdiction.

Background

In August 2006,
Xochitl Carolina Castillo de Perez and Xochitl Yvette Perez, both United States
residents, were killed in an accident involving an eighteen-wheel tractor-trailer
in Mexico.  The tractor portion of the eighteen-wheeler was owned by appellant
Lacto Comercial Organizada, S.A. de C.V. (Lacto), and the trailer portion of
the eighteen-wheeler was owned by appellant TMM Logistics, S.A. de C.V. (“TMM”). 
Lacto and TMM are subsidiaries of Grupo TMM S.A.B. (“Grupo”), and all three are
Mexican companies.

Appellees Juan Gerardo Perez, Elizabeth Carolina
Perez, Individually and as the Representative of the Estate of Xochitl Carolina
Castillo Perez and the Estate of Xochitl Y. Perez Castillo, Christine Dolores
Perez, Felipe Manuel Perez, and Maria Delores Castillo, beneficiaries and
representatives of the estates of the deceased, brought a wrongful death and
survival action against Lacto, TMM, and Grupo (collectively, the “Mexican
Companies”) in Houston, Texas, alleging, among other things, that the driver
was intoxicated and speeding.  Appellee Raymundo Peinado Bobadilla also sued the
Mexican Companies for personal injury and property damage he sustained in the
accident.  The beneficiaries and representatives of the deceased and Bobadilla are
collectively referred to as the “Plaintiffs.”

The Mexican Companies filed special appearances,
which the trial court denied without written findings of fact and conclusions
of law.  In this interlocutory appeal, the Mexican Companies contend, in seven
issues, that the trial court erred in denying their special appearances, based
on either specific or general personal jurisdiction.

Analysis

A.     Legal
Framework

Whether a trial court has personal jurisdiction over
a defendant is a question of law we review de novo.  Spir Star AG v. Kimich,
310 S.W.3d 868, 871 (Tex. 2010); Nogle & Black Aviation, Inc. v.
Faveretto, 290 S.W.3d 277, 280 (Tex. App.—Houston [14th Dist.] 2009, no
pet.).  If, as in this case, the trial court does not issue findings of fact,
we presume the trial court resolved all factual disputes in favor of its
judgment.  Spir Star, 310 S.W.3d at 871–72; Nogle & Black,
290 S.W.3d at 281.  The plaintiff bears the initial burden to plead sufficient
allegations to bring the nonresident defendant within the reach of Texas’s
long-arm statute.  See Am. Type Culture Collection, Inc. v. Coleman, 83
S.W.3d 801, 807 (Tex. 2002).  Once the plaintiff has pleaded sufficient
jurisdictional allegations, the defendant challenging personal jurisdiction
bears the burden to negate all bases of jurisdiction alleged by the plaintiff. 
See id.

The Texas long-arm statute governs Texas courts’ exercise of personal jurisdiction over a nonresident defendant.  See Tex. Civ. Prac. & Rem. Code Ann. §§
17.041–.045 (West 2008).  The long-arm statute reaches as far as federal
constitutional due process will allow, and thus the long-arm statute is
satisfied if an assertion of personal jurisdiction comports with due process.  See
Spir Star, 310 S.W.3d at 872; Nogle & Black, 290 S.W.3d at 281. 
Personal jurisdiction is proper when the nonresident defendant has established
“minimum contacts” with the forum and the exercise of jurisdiction comports
with “traditional notions of fair play and substantial justice.”  Spir Star,
310 S.W.3d at 872.  For a defendant to have sufficient contacts with the forum,
it is essential that the defendant’s contacts show that the defendant purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of the forum’s laws.  See Michiana
Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 784–85 (Tex. 2005).

 A defendant’s contacts can give rise to either general or specific jurisdiction.  Specific jurisdiction exists when the claims in question arise out of or relate to the
defendant’s purposeful contacts with Texas. Spir Star, 310 S.W.3d at
874.  For a nonresident defendant’s contacts with Texas to support an exercise
of specific jurisdiction, there must be a substantial connection between the
defendant’s purposeful contacts with Texas and the operative facts of the
litigation.  Id.  In defending against the Mexican Companies’ special
appearances, the Plaintiffs asserted both specific and general jurisdiction. 
The trial court’s order did not specify the basis on which it relied in denying
the special appearances, so we will analyze both.

B.    
 Pleading Defect

The Plaintiffs argue
that the trial court properly could have denied the Mexican Companies’ special
appearances because they were not properly sworn as required by Texas Rule of
Civil Procedure 120a and therefore were defective.  The Mexican Companies did
file an affidavit to verify their special appearances, but the Plaintiffs claim
the affidavit has several defects.  Defects in a special-appearance affidavit
can be cured by amendment.  Dawson-Austin v. Austin, 968 S.W.2d 319, 322
(Tex. 1998).  The Plaintiffs did not raise this issue in the trial court, which
would have given the Mexican Companies an opportunity to cure these alleged
defects.  The Plaintiffs cannot raise this argument for the first time on
appeal.  See Int’l Turbine Serv. v. Lovitt, 881 S.W.2d 805, 808 (Tex.
App.—Fort Worth 1994, writ denied); see also Haddad v. ISI Automation Int’l,
No. 04-09-00562-CV, 2010 WL 1708275, at *2 (Tex. App.—San Antonio Apr. 28,
2010, no pet.) (mem. op.).  By failing to take necessary action in the trial
court, the Plaintiffs effectively waived this complaint.

C.    No
Specific Jurisdiction 

In their first through fourth issues, the Mexican
Companies generally assert that the trial court erred in finding personal
jurisdiction and denying their special appearances.  The Plaintiffs present no
arguments supporting specific jurisdiction in their brief, and at oral
argument, though they did not abandon specific jurisdiction, the Plaintiffs
stated that they could not see a basis for specific jurisdiction in this case. 
We agree.

To establish specific jurisdiction, the defendant’s contacts
with the forum must have a substantial connection to the operative facts of the
litigation.  Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 584
(Tex. 2007); Markette v. X-Ray X-Press Corp., 240 S.W.3d 464, 467 (Tex.
App.—Houston [14th Dist.] 2007, no pet.).  In a similar case involving a truck
accident in Mexico, the Fifth Circuit found no specific jurisdiction in Texas
because (1) the fatal accident occurred in Mexico, (2) the decedents all died
in Mexico, and (3) all negligence, if any, occurred in Mexico.  Felch v.
Transportes Lar-Mex S.A. de C.V., 92 F.3d 320, 324 (5th Cir. 1996).  We
agree with this analysis and find the trial court erred to the extent it denied
the Mexican Companies’ special appearances based on specific jurisdiction.  We
sustain the Mexican Companies’ first through fourth issues to the extent they argue
that they were not subject to personal jurisdiction based on specific
jurisdiction.

D.   
No General Jurisdiction 

In their first through
fourth and sixth issues, the Mexican Companies argue in part that that the
trial court erred in finding they were subject to personal jurisdiction and
denying their special appearances based on general jurisdiction.  A general-jurisdiction
inquiry involves a much more demanding minimum-contacts analysis with a much
higher threshold.  See Am. Type Culture Collection, Inc., 83 S.W.3d at 807. 
The defendant’s contacts must be continuous and systematic, establishing a
general business presence in Texas.  See id. at 809; Alenia Spazio,
S.P.A. v. Reid, 130 S.W.3d 201, 220 (Tex. App.—Houston [14th Dist.] 2003,
pet. denied).  It is the nature and quality of the contacts, not the quantity,
that is critical when examining general jurisdiction.  Am. Type Culture,
83 S.W.3d at 809–10.

1.       Lacto
and TMM

Lacto and TMM are in the business of transporting
cargo through the interior of Mexico and to the United States-Mexico border. 
Lacto owns 900 trucks used in its business and hires drivers to haul cargo in
its trucks.  Lacto owns some trailers and leases some from others, but the
majority of the trailers Lacto uses to transport goods are leased from TMM. 
TMM owns 300 to 500 trailers, all of which are used by Lacto, and about 30 of
its trailers go into Laredo, Texas, each day.  It is the goal to have the
trailers loaded with cargo destined for Mexico when they re-cross the border,
and this cargo comes from customers all over the world.

Loads that are destined for the United States cross
the border within a special zone that starts twenty miles from the border in Nuevo
Laredo on the Mexican side and extends twenty miles past the border on the
United States side into Laredo, Texas.  Because of international border
regulations, cargo trucks cannot simply cross the border into the United States. 
Rather, the cargo must go through a process called “drayage.”  During drayage,
the company intending to physically cross the border with the items must
complete necessary paperwork and then deliver the items across the border,
where they are transferred to another company in the border zone to send to
their ultimate destination.  In the great majority of cases, Lacto’s loads are
unloaded in the Nuevo Laredo border zone, where an independent transfer company
completes the drayage process.  However, starting in late 2005 or 2006, Lacto made
itself available to handle the drayage process but did so only when another
transfer company was not available.  Of Lacto’s 500 trucks, 5 have the special
permit from the United States government necessary to drive in the border zone
for drayage.  This permit allows only limited operation and prohibits the
trucks from leaving the border area.  The number of times a Lacto truck crosses
the border for drayage varies on any given day from none to two, six days per
week.

Lacto and TMM do not have offices in Texas or own any
property or maintain any bank accounts in Texas.  Goods that are delivered into
the border zone do not stay there but are delivered to final destinations
worldwide.  The record contains no evidence that Lacto or TMM have any
customers in Texas, and they do not target Texas to solicit business.  Neither
Lacto nor TMM have any employees stationed in Texas, although frequently their
employees have crossed the border for various reasons.  From 2000 to 2006 for TMM
and from 2006 to the present for Lacto, an employee crosses the border four to
six times per week and drives around in the border zone looking for lost
trailers.  Sometimes employees cross the border specifically for this reason;
at other times, they already have crossed for personal reasons and look for
trailers while they are there.  Until 2005, four high-ranking TMM employees
went to meetings in Laredo one to five times per month to coordinate the logistics
of deliveries, which, because of the intricacies of crossing the border, often
required three to five parties to complete.

We find these contacts insufficient to establish
general jurisdiction.  The focus of Lacto’s and TMM’s businesses is moving
cargo through the interior of Mexico and across the United States-Mexico
border.  They have no offices, employees, property, or bank accounts in Texas,
and they do not target Texas companies for business solicitation.  The
Plaintiffs emphasize the volume of cargo loads entering Texas, which is about
thirty per day.  But, the mere flow of goods into or out of a state is
insufficient to establish a general business presence necessary for general
jurisdiction.  See Bearry v. Beech Aircraft Corp., 818 F.2d 370, 376
(5th Cir. 1987); PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d
163, 171 (Tex. 2007); Reyes v. Marine Drilling Cos., 944 S.W.2d 401, 404
(Tex. App.—Houston [14th Dist.] 1997, no writ).  That Texas is part of the
stream of commerce through which the goods pass on their way to their ultimate
destinations does not subject the transporter of those goods to general
jurisdiction.  See Arkwright Mut. Inc. Co. v. Transportes de Nuevo Laredo
S.A. de C.V., 879 F. Supp. 699, 701 (S.D. Tex. 1994) (concluding that
“[t]he fact that some of the merchandise which [the defendant] brings into
Nuevo Laredo, Mexico is ultimately destined for the United States” is
insufficient for general jurisdiction because a stream of commerce analysis is
improper in the general jurisdiction context); see also Spir Star, 310
S.W.3d at 874 (noting that “stream-of-commerce analysis is relevant only to the
exercise of specific jurisdiction; it provides no basis for exercising general
jurisdiction over a nonresident defendant” (quotation omitted)).  Courts have
found no general jurisdiction in cases with many more goods flowing into and
out of the forum than is present in the case under review.[1]  Further,
these cases involve the defendant making profits directly from Texas entities,[2] and there
is no evidence in this case that any Texas business or person is paying Lacto
or TMM anything.

The trips to locate trailers or to coordinate
transactions are likewise insignificant for general jurisdiction.  Trips
attendant to insubstantial contacts are also insubstantial.  See Am.
Type Culture, 83 S.W.3d at 808 (stating that mere purchases and trips
related thereto are insufficient to establish general jurisdiction); Markette,
240 S.W.3d at 468 n.2 (noting that neither the attorney-client relationship
with an out-of-state attorney nor routine correspondence and interactions
attendant to that relationship are sufficient to confer personal jurisdiction). 
These contacts show no intent to exploit the Texas market.  See Alenia,
130 S.W.3d at 217, 220.  Indeed, there is no evidence whatsoever to show any
targeting to Texas markets as opposed to Texas merely being a conduit of
worldwide sales.  See Bearry, 818 F.2d at 376.  Thus, the cargo flowing
to Laredo and the incidental contacts necessary to facilitate that flow do not
establish general jurisdiction over Lacto or TMM.  See Martinez v. Servicios
de Transportacion, M.G., S.A., Civil No. L-05-60, 2007 WL 543411, at *4
(S.D. Tex. Feb. 15, 2007) (finding that legal intricacies of border crossing
requiring contacts with Texas are insufficient to support general jurisdiction
over Mexican company whose business was moving goods to and from the border at
Nuevo Laredo); see also Primera Vista S.P.R. de R.L. v. Banca Serfin, S.A.,
974 S.W.2d 918, 926 (Tex. App.—El Paso 1998, no pet.) (concluding that Mexican
company’s contacts with Texas that were necessary to facilitate its customers’
business ventures in Texas were merely a by-product of its business in Mexico
and were insufficient to support general jurisdiction).

 

The Plaintiffs also argue that general jurisdiction
is proper over Lacto based on its drayage trips across the border.  Again, we
disagree.  Lacto did not structure its business with the goal of crossing the
border into Texas but does so only when there is no other option.  Only 5 of
its 900 trucks are even licensed to cross the border,[3] and the crossing
is for the limited purpose of delivering goods into the border zone in Laredo. 
The nature and limited purpose of these contacts significantly diminishes the
quality of these contacts for jurisdictional purposes.  See Alenia, 130
S.W.3d at 218; see also Am. Type Culture, 83 S.W.3d at 809–10.  The
Fifth Circuit addressed similar facts in Felch, which involved a suit
against a Mexican transportation service after its truck was in an accident in
Mexico.  92 F.3d at 321.  The Felch court rejected general jurisdiction
even though the carrier made some drayage trips into Laredo because so much of
its business was centered in Mexico and it was “wholly clear” that drayage
trips did not establish continuous and systematic contacts with Texas.  See
id. at 327–29.[4]

Although Lacto and TMM have a large number of direct
and indirect contacts with Texas, the contacts are of low quality.  Viewed in
the light most favorable to the judgment, these contacts are insufficient as a
matter of law to support a finding of personal jurisdiction based on general
jurisdiction.  Thus, the trial court erred in denying the special appearances
of Lacto and TMM.

2.     
Grupo

The Plaintiffs’ theory
of general jurisdiction against Grupo rests primarily on imputing the contacts
of Lacto and TMM, its subsidiaries, to Grupo as their alter ego.  In their
fifth issue, the Mexican Companies argue that the trial court erred in finding that
Grupo was the alter ego of Lacto and TMM.  We need not address this argument
because even if we impute Lacto’s and TMM’s contacts to Grupo, we have
concluded those contacts are insufficient to establish general jurisdiction.

The Plaintiffs identify several independent contacts
they claim Grupo has with Texas as a basis to support general jurisdiction
against Grupo, even without imputing Lacto’s and TMM’s contacts.  These, too,
are insufficient to support general jurisdiction.  The Plaintiffs stress that
Grupo, through various subsidiaries, has been providing border-crossing
services for years;  but, as with Lacto and TMM, there is no evidence that
Grupo provides any service to end-destination customers in Texas or targets
Texas for business solicitation, and the flow of goods to Texas in the stream
of commerce is irrelevant in the general jurisdiction context.  See Bearry,
818 F.2d at 376; Arkwright, 879 F. Supp. at 701; Spir Star, 310
S.W.3d at 874; Alenia, 130 S.W.3d at 217, 220.  The Plaintiffs point to
contacts such as operating a railroad line into Texas, sending vessels into
Texas, and having an office in Laredo, Texas, but there is no evidence that
Grupo itself made these contacts as opposed to a subsidiary.  Mere evidence
that a subsidiary had these contacts is insufficient to impute the contacts to
a parent.  See Spir Star, 310 S.W.3d at 873–74; BMC Software Belgium,
C.V. v. Marchand, 83 S.W.3d 789, 799 (Tex. 2002).  Also, contrary to the
Plaintiffs’ assertion, Grupo’s listing on the New York Stock Exchange provides
no basis for general jurisdiction in Texas.  See Access Telecom, Inc. v. MCI
Telecoms. Corp., 197 F.3d 694, 717 n.6 (5th Cir. 1999).  Finally, the
Plaintiffs assert that Grupo has been sued in Texas before and has not
challenged personal jurisdiction, but the record is unclear as to what
arguments were made in those other cases.  Further, personal jurisdiction is
assessed on a case-by-case basis, so the existence or lack of personal
jurisdiction in other litigation is not determinative.  See Am. Type Culture,
83 S.W.3d at 810.  These alleged individual contacts provide no support for
asserting general jurisdiction against Grupo.

The trial court erred in denying Grupo’s special
appearance, based either on an alter-ego theory or direct contacts from Grupo.

3.      Summary

The Mexican Companies are not subject to personal
jurisdiction in this suit based on general jurisdiction.  We sustain their first
through fourth and sixth issues to the extent they argue they were not subject
to personal jurisdiction based on general jurisdiction.  Because we have
determined that the Mexican Companies did not have sufficient contacts with
Texas to establish personal jurisdiction, we need not address their seventh
issue in which they assert that exercising jurisdiction over them offends
traditional notions of fair play and substantial justice.

Conclusion

As a matter of law, Grupo, Lacto, and TMM do not have
sufficient contacts with Texas to establish personal jurisdiction based on
either specific or general jurisdiction, and therefore the trial court erred in
denying their special appearances.  We reverse the trial court’s judgment and
remand with instructions for the trial court to dismiss this case for lack of
personal jurisdiction.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

Panel consists of
Justices Frost, Boyce, and Christopher.









[1]
See, e.g., Bearry, 818 F.2d at 372–73, 375–76 (finding no general
jurisdiction despite $250 million in products flowing into Texas over five
years, $72 million in contracts for products manufactured in Texas, and more
than $195 million in goods and services purchased from more than 500 Texas
vendors); PHC-Minden, 235 S.W.3d at 168–71 (finding no general
jurisdiction despite more than $1,500,000 in purchases from Texas vendors,
among other contacts); Am. Type Culture, 83 S.W.3d at 807–10 (finding no
general jurisdiction despite $350,000 in sales revenue per year to Texas,
hundreds of patents per year for twenty years being stored in Texas, and
purchases of $378,000 in supplies from thirty-three Texas vendors); Reyes,
944 S.W.2d at 402–05 (finding no general jurisdiction despite purchases of more
than  $183 million in goods in Texas from 471 sources, hundreds of contracts
with Texas entities, and sales of more than  $850,000 of scrap metal to Texas
companies).





[2]
See. e.g., Bearry, 818 F.2d at 372–73, 375–76; Am. Type
Culture, 83 S.W.3d at 807–10; Reyes, 944 S.W.2d at 402–05.





[3]
In conjunction with this licensing, Lacto obtained a business address in
Laredo.  The Plaintiffs do not dispute Lacto’s assertion that it obtained this
address after the suit was filed, and thus that contact is irrelevant.  See
PHC-Minden, 235 S.W.3d at 170.





[4]
The Plaintiffs cite several cases involving drayage or other border-crossing
cases, but they all are distinguishable.  In each of the cited cases, the
defendant had additional significant contacts that are not present in the case
under review.  See Summit Mach. Tool Mfg. Corp. v. Warren Transp., Inc.,
920 F. Supp. 722, 726 (S.D. Tex. 1996) (defendant solicited business in Texas
and solicited and negotiated contracts in Texas); Transportadora Egoba S.A.
de C.V. v. Arredondo, 217 S.W.3d 603, 608–09 (Tex. App.—San Antonio 2006,
pet. denied) (defendant had a director living in Laredo, owned land in Laredo,
filed suit in Laredo, and had bank account in Laredo); Transportacion
Especial Autorizada, S.A. de C.V. v. Seguros Comercial Am., S.A. de C.V.,
978 S.W.2d 716, 720–21 (Tex. App.—Austin 1998, no pet.) (many of defendant’s
shipments originated in Texas, defendant had bank account in Laredo, and it
traveled to Texas to solicit business from Texas companies).  The Plaintiffs
also cite Juarez v. United Parcel Serv. de Mexico S.A. de C.V., but that
court did not decide whether the contacts satisfied general jurisdiction;
instead,  it decided that exercising jurisdiction would violate traditional
notions of fair play and substantial justice.  933 S.W.2d 281, 285 (Tex.
App.—Corpus Christi 1996, no writ).